Good morning. I'm pleased to be here presiding with Judge Cowan and Judge Van Antwerpen by phone. Judge Van Antwerpen, can you hear us? I can. You're coming through loud and clear. I'm sorry I can't be there in person, but good morning. And thanks for making the effort to be with us. I know you're under the weather, so we can proceed with today's argument. And is it Mr. McInturff who will be arguing for the appellant? Yes, Your Honor. It's Burkitt McInturff. Good morning. May it please the Court. Burkitt McInturff for Plaintiff Appellant Gary Ciser. I'd like to reserve three minutes for rebuttal. Very well. Plaintiff Ciser's complaint survives for three reasons. First, the MetLife case decided by the New Jersey Supreme Court, under that standard, a late fee that is in excess of 100% of the amount overdue can easily be found to be an unreasonable penalty. Well, they say the totality of the circumstances. You have to look at everything. That's correct. They didn't say any particular number is automatically excessive. That's correct, Your Honor. But in terms of plausibility, the number of 100% is telling. And the other factors to analyze in MetLife, including the relative bargaining power of the parties, the purpose of the fee, the actual or anticipated damages that Mestlee. MetLife, the issue came up by way of a defense, as opposed to an affirmative claim for relief. Where's the authority that says you can file, you have a private cause of action, the recovery of fees you already paid? Yes, Your Honor. There are a number of rationale behind the authority for affirmative cause of action. First, the law of liquidated damages is centuries old, and the purpose of the law. Well, under New Jersey law, you're under New Jersey law, aren't you? Yes, Your Honor. Do you know of any cases answering Judge Baski's question that say that you have a cause of action in New Jersey for unpaid penalty? The best case on that, Your Honor, is the Green case recently decided by the New Jersey Supreme Court. And in Green, it was a party seeking the return of excessive attorney's fees that were paid as a result of collections of a landlord. And there was an affirmative attempt to recover those fees. And moreover, the two New Jersey cases that have dealt with late fees, there the question was never answered because it was assumed that there is an affirmative ability to recover. And most importantly, these fees are the result of unequal bargaining power between larger, sophisticated parties and consumers. Which you don't have here. You don't have any tremendously powerful purveyor of services which your client is desperately in need of and could go nowhere else to be serviced for bottled water. That is true, Your Honor, that it's a consumer good and it's not a necessity. But the purpose of the New Jersey Consumer Fraud Act is to protect consumers from unconscionable and deceptive business practices. And so that argument could be made of any fraudulent practices. The consumer can simply go elsewhere. Well, okay. But under New Jersey Consumer Fraud Act, I don't know of one case where there is a recovery under the act where there wasn't a misrepresentation or some such overreaching unknown to the person that was defrauded or misrepresented to. You haven't been misrepresented about anything in this case. Well, Your Honor, there are a number of cases that distinguish between New Jersey's prohibition of unconscionable commercial practices which represent such an overreaching, as Your Honor suggests. And those cases don't involve misleading statements. For example, the foundation of the – Well, what cases say that under the Consumer Fraud Act, New Jersey recognizes a cause of action which did not have some aspect of misrepresentation? That's the Kugler case beginning in 1971, Your Honor, and continuing up until the Ticketmaster case that we've cited in our briefs. And the principle here is that certain conduct, while disclosed, can still represent such an overreach by a party with superior bargaining power. And in the context of modern-day commercial practice – Well, what's superior? You know, you talk about superior bargaining power. Unless I – something went over my head here. I see two businessmen that entered into a contract here. I don't see someone that had overreaching power, and there was nowhere else you could go for a bottle of water except deal with this person that was taking advantage of your hat. So where do you come by to put forward this superior bargaining power? If you didn't like this company, you could have gone to another company and gotten a lesser fee or no fee, I guess. Indeed, Your Honor, the superior bargaining power comes from the ability of Nestlé to impose terms without being able to negotiate them. And the MetLife case is a – You don't have that here, though, do you? Yes, we do, Your Honor. Mr. Sizer was not permitted to negotiate the amount of the late fee. And again, the MetLife case is telling, because there you have two commercial parties who are sophisticated, represented by counsel, that are able to enter into an agreement and transfer risk based on advice of counsel. Here, this is a consumer transaction that comes in with preprinted terms and, yes, Mr. Sizer could have gone elsewhere, as any consumer could always go elsewhere after they've been defrauded. But the purpose of the New Jersey Consumer Fraud Act is to allow consumers to prevent such fraud in the future by coming forward. How has your client been defrauded? What did he have to pay for that he did not realize when he signed the contract he would have to pay for? Excuse me, Your Honor, I misspoke. It's not that he's been defrauded. He was the victim of an unconscionable commercial practice, which is distinct from a fraudulent practice under the New Jersey Consumer Fraud Act. Well, then I get back to Judge Van Esky's original opening question to you. As I understand, New Jersey law has no cause of action for an unpaid assessment or penalty. Again, I think the Green case is the case that's most important. What's the facts of the Green case? I can't recall it to mind. It's a landlord-tenant case where the tenants were seeking to recover onerous attorney's fee provisions that was decided in 2014, shortly after some of the briefing in this case began. And in that case, the landlord attempted to impose an attorney's fee provision that was well in excess of the actual amount that the attorneys actually expended on seeking the payments under the lease. And first, the landlord argued that the attorney's fee provision was a liquidated damages clause. And the New Jersey Supreme Court, relying on the MetLife case, said no, this is so far outside of liquidated damages that it's not liquidated damages. And it did permit the consumer plaintiffs to recover the attorney's fee. Do you have any commercial? You know, you deal with attorneys. You're dealing with dynamite. New Jersey Supreme Court is very, very solicitous of people that feel as if attorneys haven't treated them right. But I'm talking about commercial transactions that you have here, where you weren't required to deal with this particular appellee. You could have dealt with a number of others. And unless something went over my head here, I just see two businessmen contracting. You weren't overreached or misrepresented. You knew that if you didn't pay, you'd have to pay a late fee. Again, Your Honor, the late fees are analyzed under the MetLife test, which looks at the totality of the circumstances. And it's because of the longstanding difficulty that courts have found with liquidated damages provision and to prevent the potential for overreach in those sort of contracts. And this is the classic case of where one party can overreach, utilizing its ability to simply supply the terms of the agreement in the hopes of – and this is a consumer case, so we're talking about hundreds of thousands, if not millions of consumers. It's a percentage game. It's in the hopes that enough consumers who pay late will simply pay the fee and it will become profitable. The essence of the claim is that Nestle's underlying – the amount of money Nestle suffers as a result of this is a dollar. So if they lose a dollar and they're able to charge $15 and they have enough consumers that pay that fee, it becomes a profit center. And the purpose of the liquidated damages analysis is to look into whether or not that fee actually is a profit and prevents efficient breach. As amicus AALP has noted, there are a number of consumers who need to be able to breach these contracts and choose between more important medical or other types of bills. Do you agree that bottled water is not a necessity? I do agree, Your Honor. Okay, then let me ask you this. Why did you just go to someone else if you didn't like the late fee you contracted for in this case? Again, Your Honor, a consumer is always free to do that. No, not every consumer is free to do it. You were, because there were any number of other bottle companies that were in business that you could have contracted for at a lesser fee or no fee. Well, the plaintiff, for one, before being represented didn't understand that this was an unlawful act. And so the plaintiff is going to continue to pay the fee because, like many consumers, they believe that the fees that they're charged are lawful. Until a consumer consults with a consumer attorney, they're not going to know that. For example, we retained an expert in order to assess Nestle's damages. And in this case, their damages are $1. An ordinary consumer wouldn't know that they were paying $14 in excess of what Nestle was actually owed until they retained counsel. The complaint, the Second Amendment complaint, refers to the report of the expert but doesn't attach to the expert's report? That's correct, Your Honor. How does that make any sense if you don't attach the expert report? And where you have these undocumented gigantic allegations that you make that Nestle's late fee was stratospheric, filled their cash vaults, and the report you quote from it without any facts to justify these allegations? Well, we believe that the allegations of stratospheric charges are evident in the math, Your Honor, a charge of 132% compared to the overdue amount. And we didn't attach the expert report because this is a pleading. We feel that we adequately pled the case the first time, but in response to the district court's first dismissal opinion, we went and we retained an expert in cost accounting, a chair professor at NYU, who looked at this case and determined preliminarily based on the stage that we're at in this case that Nestle's costs as a result of the late payment were approximately $1. And when you have $1 in loss and a $15 penalty, that's 900% larger than the amount of damage actually sustained. And that is quite shocking. It's stratospheric. And we believe that it's an unlawful commercial practice under the New Jersey Consumer Fraud Act. We believe that under the MetLife totality of the circumstances, which the district court didn't get to, but if the district court would have looked at the totality of the circumstances, he would have found a one-way- If we conclude that New Jersey Consumer Fraud Act requires that the consumer be misled, in so many words, tell me how your client was misled when they signed this contract, that they didn't get what the contract said they were going to get. First of all, assuming our uendo that the court does conclude that the- That the Consumer Fraud Act, assume we conclude as a matter of law that you have to have some sort of misleading, then where in this case has your client been misled when they signed this contract from what they thought they were going to get? Assuming that the court holds as much as Your Honor stated, the misleading component would be that the late fee is, one, a lawful fee because it's unlawful, and two, that it's actually a late fee meant to recover for damages sustained. When Nestle sustains only one damage, $1 in damages, they can't charge a $15 fee and purport to make that fee appear as if it is for the damages that it sustained. It would be misleading. But we assert, Your Honor, that by far the longstanding principle in New Jersey, the statutory text of the New Jersey Consumer Fraud Law, and all of the law that we cited in our briefs, wouldn't require that a claim under the New Jersey Consumer Fraud Act only be for misleading conduct. As NACA, the National Association of Consumer Attorneys, wrote in their amicus brief, there are a number of practices that significantly harm consumers. All right, we'll hear you on rebuttal. Judge Van Antropen, do you have any questions? Well, I was just wondering, your client, they're suing on behalf of an individual, but isn't this water really being used for a business purpose? No, Your Honor, this is a one-man shop in a home office, and to the extent that it could be said that the water is being used for a business purpose, the New Jersey Consumer Fraud Act covers small businesses because, again, they're in the same circumstance as consumers where they don't have the ability to negotiate the terms under which they're. All right. Now, let me ask you something else. The New Jersey, the decisions of the New Jersey Supreme Court are binding on us. I found two cases. Byshinski is one, and that seems to say that fraud is not required and that it would be misleading, and Fenwick seems to say that it is required. Now, which is it? We think, again, the Green case and the Kugler case. Those aren't Supreme Court cases, are they? Yes, they are, Your Honor. Oh, are they? Okay. And more importantly, any court to squarely look at this issue. Defendant has cited a number. Do you need, as you've been asked several times, do you have to show that there was some sort of fraud or deception, or don't you? No, you do not, Your Honor, because the text in the statute is clear that any unconscionable commercial practice is, the statute's written in the disjunctive, as a number of courts have found, that an unconscionable commercial practice is separate and apart from a fraud. All right. Now, let me ask you something else. You would say that a MetLife 5% late fee would be appropriate. Is that correct? Under the totality of the circumstances, a 5% late fee compared to a 132% late fee is a lot closer to lawful than we believe that this case presents. And more importantly ---- All right. Now, look, your client's November 2008 bill was $11.31. That would be a late fee of 57 cents. That would hardly even cover postage. How could that be adequate? It could be adequate because Nestle didn't send a dunning letter, and the only acts Nestle took to recover on whatever damages they received was to preprint a notice on Plaintiff Sizer's bill saying, did you forget about us, please pay. And so with a company of Nestle's size, we believe that 57 cents is, in fact, probably a very adequate amount of compensation. Well, suppose you had not. You're just talking about a couple isolated situations. Suppose Nestle was faced with hundreds upon hundreds of people who defaulted. That could start to have a serious effect on their business, couldn't it? I don't know if it would have a serious effect on new business. Oh, if people didn't pay, you don't think that would affect their business? It would certainly affect their business. But, again, if you look at comparable companies of Nestle's size, Time Warner is a good example. They charge a 1.5 percent late fee, or AT&T, they charge a $5 late fee. Here, and again, the important analysis is whether or not we're overcompensating parties for the damages they suffered. And our expert shows that Nestle's damages are borrowing costs, which are minimal, especially in light of low interest rates in the current environment, and additional incremental administrative costs. Let me ask you one other thing. If the sharing of fraud or misleading or that type of thing is required, then would you agree that the heightened pleading standards of our Rule 9 would apply? I don't think that Rule 9 applies to the New Jersey Consumer Fraud Act, but I would have to look into that and get back to you. Okay. Okay. I have no further questions. Thank you. Anything else, Judge? All right. Thank you. Mr. Garraud, am I pronouncing your name correctly? Yes, Your Honor. One of the unusual events that gets pronounced correctly on the first try. You should have a name like mine. Good morning, Your Honor. I'd like to reserve three minutes for rebuttal, please. You don't have that right. I don't have that right? No. Okay. Then I will reserve that. No further rebuttal. Okay. In the analysis of any 12B6 motion, the first element that this Court has said is the first thing that you have to do is look at and identify the elements of the claim. And the appellant, and I'll start with his common law so-called and unjust enrichment claim before we get to consumer fraud. That's the order in which he briefed his causes of action. He doesn't identify what the elements of this unidentified common law claim are. He does not identify what the elements of his unjust enrichment claim are. In fact, in his brief to this Court, he starts out with the third step or stage. He skips over what are the elements and then what are the conclusory type statements that should be eliminated and ignored from the analysis and just jumps into what the third step would be. But in answer to one of Your Honor's questions about is there any case that has ever, in New Jersey, permitted a party to, as an affirmative claim, as an affirmative cause of action, to collect a late payment that the party paid at some earlier point in time? The answer is no. The case that was cited to Your Honor by counsel as authority for that cause of action, being the Green case, does not support that claim at all. In that case, there was an attorney's fee provision and a residential lease, which was deemed to be additional rent. The defense was that that clause should be evaluated by the Court as a liquidated damage provision. And the Court, both the Appellate Court and the New Jersey Supreme Court, said no, that is not a liquidated damage provision and we will not evaluate it as such and went on to evaluate it as an attorney's fee provision in the context of being additional rent, which the landlord defendant in that case was claiming was one of the reasons for eviction. So the claim in that case, dealing with the CFA piece of it, was that the defendant had misrepresented the amount of rent due by misstating the amount of counsel fees due, which they were asserting as a cause of action. So there was a clear misclaim for misrepresentation in that case. What's wrong with the appellate's argument that within the Consumer Fraud Act, there's a cause of action there that's recognized for unconscionable commercial practices and that charging someone a late fee running up to unbelievably sums of money is unconscionable? What's wrong with that? Why shouldn't that clear equal? Well, for a compound question, I'll answer the first part. We are not claiming, and the District Court did not find, that merely alleging an unconscionable commercial practice, which is identified as an unlawful act under the CFA, wouldn't, as a matter of law, be a basis for an action, assuming you have the facts. No, I'm talking about under the Consumer Fraud Act. That's what I'm talking about, under the Consumer Fraud Act. The Consumer Fraud Act defines the unlawful act. The elements of a Consumer Fraud Act is you need an unlawful act that creates an unsustainable loss, and then you need the causal connection between the unlawful act. And your adversary says that he doesn't have to have something, a misrepresentation. Well, he does. All he needs, his position is, all he needs is an unconscionable commercial practice, and to charge a late fee of this dimension is shocking and unconscionable. Well, first of all. What's wrong with that? Well, what's wrong with that is that the New Jersey Supreme Court, on multiple occasions, starting with Kugler, which was a decision, actually, before the CFA was amended to include the unconscionable commercial act, but Kugler said that's implied in any event. They've all said that, at a minimum, to have an unconscionable commercial practice under the CFA, you must have a capacity to mislead. The conduct, you must look at the conduct. How about Mashinsky? I'm not familiar with that case, Your Honor, but in response to Your Honor's question earlier, you don't have to prove actual fraud. You don't have to prove that a party was defrauded, but you have to prove that the conduct that's alleged to be an unconscionable commercial practice has a capacity to mislead. I'll quote from Mashinsky. It's Mashinsky v. Nichols Yacht Sales, 110 New Jersey, 464. To prove a violation of that act, it is not, quote, it is not necessary to show actual deceit or a fraudulent act. Any unconscionable business practice is prohibited. Now, maybe it's a little bit abstruse, but it says what it says. Yes, but every court that's dealt with the unconscionable commercial practice has said that in the context of the CFA, there must be a capacity to mislead. As you said, there didn't have to be, I think. Well, I can quote to you. And that's the New Jersey Supreme Court. That's not some lower court that's just persuasive or advisory. Whatever that means, it's binding on us because it's a matter of construing state law, is it not? Well, what's also binding on your Honor are multiple other New Jersey Supreme Court cases, starting with Kugler, which is one of the cases counsel for the appellant cited. And there they say that an unfair, unconscionable commercial practice must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer. And you would also argue that there has to be heightened standards of pleading there. Well, that's a pleading. Let me finish. Turf Lawnmower, another New Jersey Supreme Court case. Business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer. We have unconscionable commercial practice implies a lack of a good faith, honesty, and fact, and observance of fair dealing. That, again, is Kugler. And there's the Agostino case. And the other thing that the courts have said, and I say the courts, the New Jersey Supreme Court, again, on multiple occasions, any breach of contract is not per se unfair or unconscionable. And a breach of warranty alone does not violate the CFA. And the courts, and this is the Agostino, which, again, is another New Jersey Supreme Court case, more recent vintage, New Jersey courts have been careful to constrain the New Jersey Consumer Fraud Act to fraudulent, deceptive, or other similar kinds of selling or advertising practices. All right, so suppose you had a late fee of, I don't know, $10,000, but it was fully disclosed and made clear. Would that be deceptive? That would not be deceptive. That might ultimately be an unenforceable contract provision if the party who was trying to collect and sued to collect that late fee might not be able to prove his claim. But, you know, the law on the contract aspect of this claim, that is the late fee, is really the UCC. Section 2718 provides for liquidation or limitation of damages in contracts for the sale of goods. It's referenced in the MetLife decision, and it is, frankly, the UCC Article 2 is the law that governs contracts for the sale of goods. And a liquidated damage provision is not unlawful, per se. In fact, the UCC even permits and provides for a liquidated damage provision, and it goes on to say, it says, damages for breach by other party may be liquidated in the agreement, but only in an amount which is reasonable in the light of the anticipated or actual harm caused. Difficulties, proof of loss, inconvenience or nonfeasibility, or otherwise obtaining an adequate remedy. Then it says, a term fixing unreasonably large liquidated damages is void as a penalty. So it's a contract provision which is void. So unless you have elements of the marketing or the business practice or the circumstances surrounding that transaction which misled or had a tendency to mislead the party to the contract, there wouldn't be a consumer fraud claim. There might be a claim or a defense if the party tried to sue on a liquidated damage provision to collect that fee. There might be a defense that it's unenforceable because it exceeds the reasonable costs and expenses. But that's a defense, and as previously stated, there is no authority in New Jersey, there never has been, that asserts an affirmative claim to collect a liquidated damage provision that otherwise might have been unenforceable if tested when the party tried to collect it. How about his claim for a third claim under the unjust enrichment? Well. I mean, SD being unjustly, what you be unjustly rich, it's interesting because your pleadings didn't even set forth what your costs are. You never justified why $15 was a necessary late fee. You make statements that it isn't, but you never gave us the dollar and cents of why it costs that much to collect a late fee. Well, Your Honor, this is a 12-6 motion. We're bound by the facts pled in the complaint, and we were not going to turn the motion into what would have been a summary judgment motion if we had brought in external facts into the analysis. That's why we didn't. But in the court, or whether it's this court doing their de novo review or the district court, the judge's order will apply judicial experience and common sense in determining whether or not the facts alleged meet the plausibility standard. And what's pled in the complaint, applying just pure common sense, doesn't even come close to alleging what facts or what. Well, that's a conclusion. That's your position. But you don't give us any facts to show that this late fee is justified by reason of your expenses. Well, what the court found, the district court found, was that, not that it was justified, but that the complaint did not plead sufficient facts and make it plausible that the liquidated damage provision was unenforceable. Do you agree that the MetLife reasonableness standard is the applicable standard? No, actually, no. That's what the district court argued. That's what the district court applied. But actually, it would be 2718 under the UCC. Now, they're both very similar. Okay, they're reasonable standards. But MetLife doesn't apply for a couple of reasons. It wouldn't apply for a couple of reasons. One, the court was very clear that that relates only to a fixed percentage late fee in a commercial loan transaction. And there's a difference between where you have a fixed percentage, like a 5% fee, no matter what the amount in default may be, versus a fixed dollar amount. Because you don't look, and even MetLife doesn't compare, the percentage, doesn't compare as a percentage, the amount of the late fee as compared to the amount of the unpaid payment on which the late fee is charged. That percentage, which is what the appellant argues, was not the analysis that MetLife did. In fact, they rejected that analysis because that's what the appellate court had done in holding that the late fee in MetLife was unenforceable. And the court said, no, you don't look at the differential between the late fee charged on a percentage basis and what the amount of the unpaid balance may be that's owed. What you've got to look to is, is the late fee a reasonable estimate of the actual costs incurred as a result of the breach of contract by not making the payment? Wouldn't it be enough at this stage to say the plaintiffs have alleged enough, and then you fight this out at the summary judgment stage? If you're saying that the test is, is it a reasonable estimate of your damages that you've incurred, how do we know that right now based upon the pleadings? Well, how can we make that determination that it would be implausible for the plaintiff to show that it's not a reasonable estimate of your damages? Well, I think that the determination in Iqbal is not for anybody to establish it's implausible. They have to establish that it is plausible by pleading facts, and they have not pled facts other than certain conclusions, other than certain information and beliefs. Well, how are they supposed to find out what the true situation is at this stage? Well, to get into court, that's what they, they need to have certain facts, and their rule eight is the... But you, you said, even you said that it's hard to estimate what your late payment costs are, haven't you? And that's, yes, but that's one of the criteria... Well, how in God's name could the appellants ever come up with them then? Well, they don't have to come up with specific dollar amounts. Nobody's claimed that they have to come up with specific dollar amounts, but they certainly have to, to, to allege and assert what the type and categories of costs would be, such as a Nestle or some similar type company, that they would incur. Didn't they do that through the report of the expert or the allegations that the expert purportedly says? There is no expert report, and as a pleading matter, the expert is what they assert in their complaint and plead in their complaint, as to this expert is no more than opinion testimony, which is unsupported by any facts, and frankly... Well, it's still 132%, is it not, facts? Yeah, but that's not a relevant fact, because there's no, the law does not say you look at the percentage of the late fee as against the, the unpaid balance. The retail installment sales act is an example of what we, because MetLife, using the MetLife analysis, you look to, you can look to certain statutes that provide for late fees and see how they relate. It's only $10, or 10%. It's $10, but it could be $10 on a $2 payment. It's $10, notwithstanding what the unpaid balance may be. It's 50% higher than the retail. It's $5. It's 50% higher than that. I understand that, yeah, but this is not done on math. It's done on actual disproportionate dollars, or done on actual disproportionate dollars from what the reasonable actual dollars incurred may be from the breach. So that they're, you know, in looking at what it would cost, they themselves plead in a complaint, for example, that Nestle has this computerized monitoring system that provides an advanced warning to the, to a late payment person, such as the plaintiff in this case, that says, you know, did you forget us? Please make the, the payment is overdue, and if you don't, a late fee can be charged. That obviously costs something. You just don't come out of thin air. Their so-called expert makes nothing about not only that cost, which is plead in a complaint, or any personnel costs. He says it takes, costs you a dollar to do a letter, or less than a dollar to do a letter, but how about the person who's got to oversee it and monitor it and actually, you know, push the button. So it's not conceivable that these two limited costs, which are so-called incremental administrative costs and the so-called loss interest costs are the costs. If you look at Medlife. Your time has expired. Judge Van Ants, no, I'm stepping on the name. Judge Van Antwerpen, do you have any questions? No, sir. Thank you for inquiring, but I have no further questions. All right, thank you very much. Your Honor, I'd like to reemphasize that this is a pleading at the 12B6 stage, and in terms of the plausibility analysis, we set forth a very plausible theory of Nestle's loss as a result of a late payment through our expert, and that loss is an interest charge, an incremental administrative cost, and the cost that counsel has referred to in terms of people to oversee whether or not money is coming in, those are fixed costs. Those are costs that the company would have to incur regardless of whether or not a consumer pays late, and the additional costs associated with late payments for a company of Nestle's size are going to be negligible. They're going to be in this sense. I want to get back to the question that I had before. Can you cite any case that held that there's a common law cause of action for recovery of these fees? Yes, Your Honor. Because that's not green, right? Well, green supposes a common law cause of action, or it supposes a cause of action for recovery. Under what? Under the Consumer Fraud Act. Yes, Your Honor. So that's why we pled the Consumer Fraud Act. But in addition, there's the New York Career Guidance case and the King's Choice. Do you have any cites of New Jersey cases which say there's a freestanding claim? Your Honor, both the King's Choice and the New York Career Guidance Services case show the same. Where's the cites? They're in our papers, Your Honor. In the briefs? Yes, on page four of the briefs. Okay. We'll pick it up. Okay. So back to the plausibility analysis. It's also important to note, Nestle takes out of its damages as a result of a late payment third-party collection and attorney's fee costs. So Nestle is limiting the universe of costs that it incurs as a result of a late payment, because if its costs get too high, then it exports those costs to a third party. So we're talking about a very limited universe. And, again, at the pleading stage, with the aid of an expert, we've posited that Nestle is out a dollar as a result of the late payment. And counsel and Nestle has not responded with an amount. They've responded with speculation that at this stage is inadmissible. And, in fact, using judicial common sense, the speculation that Nestle is making about the amount of the fee, it doesn't add up when you look at other large comparable companies or even other smaller bottled water companies. Nestle's fee is higher by 50 percent. So we believe that we've well met Twombly and Iqbal and we should be allowed to proceed to discovery. And we believe that this case, because it has important ---- King's Choice is a District of New Jersey decision. That's correct, Your Honor. What's the other case? It's a New Jersey lower court decision, the career guidance case. It's not an appellate decision. Thank you, Your Honor. Thank you very much. Judge Van Antwerpen, any other questions? I have no further questions, sir. Thank you for asking. Thank you. Thank you very much. We'll take the matter under advice. Thank you.